UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KENNITH MYLES,

                Plaintiff,                        Case No. 1:23-cv-451

v.                                            Honorable Jane M. Beckering

UNKNOWN CARR et al.,

                Defendants.
_____/

**OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 6.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915A(b) and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against the defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

       With regard to Plaintiff's claims against Defendants Carr, Miller, Rectenwal, Wideman, and the MDOC, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief

can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

<u>Discussion</u>

## I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the following IBC staff: Registered Nurse Stacy Rectenwal, Correctional Officer D. Miller, Correctional Officer Unknown Carr, Warden Matt Macauley, Nurse Matthew Wideman, Correctional Officer Unknown Allen, Grievance Coordinator N. Brooke, Grievance Coordinator R. Brokaw, Assistant Deputy Warden B. Hadden, Assistant Resident Specialist C. Battle, Correctional Officer Unknown Bagley, and Prison Counselor Unknown Houghton. Defendants Rectenwal, Miller, Carr, Macauley, Wideman, and Allen are sued in their official capacities only. (ECF No. 1, PageID.2–3.) Plaintiff also sues the MDOC.

Plaintiff alleges that, on February 6, 2023, at 11:25 a.m., "a[n] incident occurred" in the IBC unit 5 dayroom. (*Id.*, PageID.5, 6.) Plaintiff was "tackled" by Defendants Carr and Miller. (*Id.*) While Plaintiff was falling, Plaintiff's left shoulder hit the edge of the wall, dislocating Plaintiff's "AC Joint." (*Id.*, PageID.6.) Plaintiff was then transferred to segregation. (*Id.*)

While being transferred to segregation, Plaintiff asked Defendants Carr and Miller if he could see "medical" because he was experiencing shoulder pain. (*Id.*) Defendants Carr and Miller

2

told Plaintiff to submit a medical kite. (*Id.*) Plaintiff contends that he was not "medically cleared" during processing for segregation, in violation of MDOC policy; however, once Plaintiff was in segregation, an unidentified corrections officer provided Plaintiff with a medical kite form. (*Id.*) Plaintiff completed the form and slid it into the door to be picked up. (*Id.*)

After an "hour or so," Plaintiff's pain began to intensify. (*Id.*) Plaintiff asked the unidentified corrections officer for medical attention. (*Id.*) The corrections officer retrieved Defendant Rectenwal, who came to Plaintiff's cell. (*Id.*) Defendant Rectenwal asked Plaintiff about Plaintiff's pain level and whether the hurt shoulder was Plaintiff's "punching shoulder." (*Id.*) Defendant Rectenwal also told Plaintiff to stand up straight so that Plaintiff's shoulder could be square, which Plaintiff did, albeit with pain. (*Id.*, PageID.7.) Defendant Rectenwal told Plaintiff that there was nothing wrong and provided Plaintiff with some Tylenol and ibuprofen. (*Id.*)

On February 12, 2023, Plaintiff submitted a second medical kite. (*Id.*) The following day, non-party Registered Nurse Kelley visited Plaintiff and performed an evaluation. (*Id.*) Defendant Wideman then evaluated Plaintiff on February 16, 2023. (*Id.*) On February 21, 2023, Plaintiff received an x-ray, which showed that Plaintiff's AC joint had been dislocated, and that Plaintiff had sustained a possibly rotator cuff injury. (*Id.*) Plaintiff states that an MRI was needed "[t]o get more details." (*Id.*) Defendant Wideman performed a follow-up visit on March 2, 2023, and agreed to provide Plaintiff with a pain injection. (*Id.*)

Plaintiff received a pain injection and sling from Defendant Wideman on March 8, 2023. (*Id.*, PageID.8.) However, Plaintiff did not receive an MRI, "receive a date for surgery," or see a "real doctor." (*Id.*)

Plaintiff also alleges that, while Plaintiff was in segregation at IBC, Defendant Allen "used racial and verbal abuse[] against the whole B-upper tier." (*Id.*) Plaintiff wrote a grievance about this issue, which was denied, as with "all the grievances filed" by Plaintiff. (*Id.*, PageID.8, 9.)

After Plaintiff submitted his grievance against Defendant Allen, Defendant Allen issued Plaintiff a "false class three misconduct." (*Id.*, PageID.9.) Plaintiff was afraid that Defendant Allen would do something to Plaintiff's food in response to the grievance, but Plaintiff was not moved away from Defendant Allen. (*Id.*)

On April 6, 2023, Plaintiff was transferred to DRF. (*Id.*, PageID.9.) Plaintiff claims that this transfer was retaliatory, "due to all the grievances" that he filed while at IBC. (*Id.*) Since being transferred to DRF, Plaintiff has still not received an MRI or doctor's visit. (*Id.*)

Plaintiff alleges that the "evidence shows a strong case against MDOC for medical malpractice, unnecessary use[] of force, racial and sexual abuse, mental distress[]" and that Plaintiff will, therefore, be "pushing for civil action against MDOC." (*Id.*, PageID.10.) He seeks compensatory damages and injunctive relief. (*Id.*, PageID.11.)

## II.    Misjoinder

Plaintiff brings this action against thirteen named Defendants, alleging that he was subjected to unnecessary force, causing a shoulder injury for which he received inadequate treatment, and, separately, that Plaintiff was harmed as the result of racial and verbal abuse and retaliation. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

A.      **Improper Joinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D. N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the

three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's complaint concerns an "incident" and subsequent use of force by Defendants Carr and Miller on February 6, 2023. (ECF No. 1, PageID.5, 6.) Plaintiff alleges that, while Plaintiff was falling, his shoulder was injured. (*Id.*) He contends that Defendants Carr and Miller "bl[ew] . . . off" Plaintiff's request for medical care. (*Id.*) The manner in which Plaintiff presents his factual allegations supports identifying Defendants Carr and Miller as the appropriate starting point for the joinder analysis. By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff then alleges that he received inadequate care for his shoulder injury, implicating Defendants Rectenwal, Wideman, and the MDOC. He also complains of "racial and verbal abuse[]" by Defendant Allen. (*Id.*, PageID.8, 9.) Plaintiff alleges that he submitted at least one grievance related to this abuse and was subjected to retaliation by Defendant Allen. (*Id.*) Plaintiff also complains that his grievances were denied and his transfer to DRF was retaliatory. (*Id.*, PageID.9.) Plaintiff makes no factual allegations against Defendants Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, or Houghton.

Liberally construed, the Court finds that Plaintiff's claims against Defendants Rectenwal, Wideman, and the MDOC are transactionally related to Plaintiff's initial claims against Defendants Carr and Miller. They too involve the evaluation and treatment of Plaintiff's shoulder injury. However, no matter how liberally the Court construes the complaint, Plaintiff has not stated at least "one claim against each [remaining Defendant that] is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Although all claims described within Plaintiff's complaint occurred over a relatively brief period of time—from February 6, 2023, until the time that Plaintiff prepared his complaint on April 26, 2023—that relationship simply is not enough to conclude those claims *arise* out of the same transaction or occurrence. Plaintiff does not allege that Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton were involved in the February 6, 2023 use of force or the provision of medical care for Plaintiff's shoulder injury.[1] There is no

---

[1] Even if Plaintiff had intended to bring claims against Defendants Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton related to Plaintiff's shoulder injury or the use of force, his claims would be subject to dismissal. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege,

transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor is there a question of law or fact, *see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Accordingly, the Court concludes that Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton are misjoined.

### B.      Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'" (*quoting Newman-Green, Inc. v.*

---

with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendants Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton in the body of his complaint. His allegations against them fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

*Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint, describing events that took place in August through November 2022, as related to Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton, provides no indication that the statute of limitations has or will run on Plaintiff's claims against these Defendants, and

Plaintiff has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is cautioned that the failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915€(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiff brings claims against Defendants Rectenwal, Wideman, and the MDOC for violation of his Eighth Amendment rights. (*See* ECF No. 1, PageID.10.)

A.    **Section 1983 Claims Against the MDOC**

Plaintiff seeks to bring § 1983 claims against the MDOC. (ECF No. 1, PageID.10.) However, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Neither the State of Michigan nor the MDOC is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

12

Moreover, even if the MDOC was a "person" under § 1983, Plaintiff's claims against it would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Accordingly, Plaintiff cannot maintain his claims against the MDOC.

## B.    Official Capacity Claims

As noted above, Plaintiff sues Defendants in their official capacities only. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, an official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

13

As discussed above, the MDOC is absolutely immune from suit under the Eleventh Amendment. Thus, the official capacity defendants are absolutely immune from Plaintiff's claims for monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief against a state official should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at IBC, which is where he avers that Defendants Carr, Miller, Rectenwal, and Wideman are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No.

89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Because Plaintiff cannot plausibly suggest that he is in danger of any direct future injury as a result of the actions of IBC Defendants Carr, Miller, Rectenwal, and Wideman, his claims for injunctive relief will likewise be dismissed.

Accordingly, for these reasons, Plaintiff's official capacity claims against Defendants Carr, Miller, Rectenwal, and Wideman will be dismissed. As noted above, Plaintiff brings claims against these Defendants in their official capacities only, and therefore, Plaintiff's complaint is subject to dismissal for this reason alone.

### C.    Individual Capacity Claims

Even if Plaintiff had brought claims against Defendants Carr, Miller, Rectenwal, and Wideman in their individual capacities, as explained below, Plaintiff fails to allege sufficient facts to plausibly suggest that these Defendants violated Plaintiff's constitutional rights.

#### 1.    Eighth Amendment—Use of Force

Plaintiff contends that Defendants Carr and Miller used "unnecessary" force, in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.10.) Plaintiff alleges that, in connection with an "incident" in the dayroom, Defendants Carr and Miller "tackled" Plaintiff. (*Id.*, PageID.6.) As Plaintiff fell to the ground, Plaintiff's shoulder struck the wall, resulting in Plaintiff's shoulder injury. (*Id.*) Plaintiff was subsequently transferred to segregation. (*Id.*)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene

society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Plaintiff's Eighth Amendment claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotations omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273

16

F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Here, Plaintiff does not describe the events that preceded the actions of Defendants Carr and Miller in "tackl[ing]" Plaintiff; however, Plaintiff acknowledges that Defendants' actions came in response to an "incident" and ultimately resulted in Plaintiff's placement in segregation. Plaintiff also does not contend that Defendants Carr or Miller purposefully caused Plaintiff's shoulder injury, only that it occurred while Plaintiff was falling to the ground. Further, Plaintiff has alleged no facts to suggest that Defendants Carr and Miller used force maliciously or sadistically to cause harm.

It is unfortunate that Plaintiff hit his shoulder, and the Court does not minimize this incident; however, the use of force in response to a prison incident, without more, does not plausibly suggest an unnecessary or wanton infliction of pain as opposed to "a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In short, Plaintiff has simply failed to plead enough facts to state a claim. Plaintiff appears to ask the Court to fabricate plausibility to his claim from mere ambiguity. But ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendants violated the Eighth

17

Amendment. *See Iqbal*, 556 U.S. at 679. Plaintiff has not done so here. His Eighth Amendment claims of excessive force will be dismissed.

### 2.      Eighth Amendment—Medical Care

Plaintiff also alleges that Defendants Carr, Miller, Rectenwal, and Wideman failed to provide Plaintiff with adequate medical treatment for this shoulder injury. In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

Like a claim of excessive force, a claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

18

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layperson cannot see the medical need, a condition may be obviously medically serious where a layperson, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any layperson would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted). "[I]f a plaintiff suffered from a minor or non-obvious medical condition, he can show that his condition was objectively serious 'if it is one that has been diagnosed by a physician as mandating treatment.'" *Mattox v. Edelman*, 851 F.3d 583, 598 (6th Cir. 2017) (quoting *Blackmore*, 390 F.3d at 897).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a]

plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*,

894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment

states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court

explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to
> constitute an unnecessary and wanton infliction of pain or to be repugnant to the
> conscience of mankind. Thus, a complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a valid claim of medical
> mistreatment under the Eighth Amendment. Medical malpractice does not become
> a constitutional violation merely because the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted).

### a.    Defendants Carr and Miller

Plaintiff contends that, during his transfer to segregation following the incident during

which his shoulder injury occurred, Plaintiff asked Defendants Carr and Miller if he could see

"medical" because he was experiencing shoulder pain. (ECF No. 1, PageID.6.) Defendants Carr

and Miller told Plaintiff to submit a medical kite. (*Id.*) Thereafter, an unidentified corrections

officer provided Plaintiff with a medical kite form, which Plaintiff completed and returned. (*Id.*)

While the Court assumes, without deciding, that Plaintiff's shoulder injury constitutes an

objectively serious medical condition, Plaintiff fails to plead facts that would suggest that

Defendants Carr and Miller were deliberately indifferent to the same. Plaintiff alleges that these

Defendants—non-medical personnel—instructed Plaintiff to follow the process for submitting a

medical request, which Plaintiff did. Plaintiff's complaint gives no indication that either Defendant Carr or Defendant Miller was under the impression that Plaintiff's condition was emergent, or that Plaintiff was suffering from anything other than shoulder pain. And nothing in the complaint plausibly suggests that either Defendant was aware of a serious risk of harm in requiring that Plaintiff submit a medical kite in order to receive medical attention. The Court will dismiss Plaintiff's claims against Defendants Carr and Miller.

### b.      Defendants Rectenwal and Wideman

Plaintiff alleges that Defendants Rectenwal and Wideman provided him with inadequate medical treatment. However, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

21

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). Moreover, "the right to adequate medical care does not encompass the right to be diagnosed correctly[.]" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944–45 (6th Cir. 2010) (finding that the doctor's initial incorrect diagnosis of severe constipation, even "in light of [the prisoner's] substantial weight loss and sharp stomach pain[,]" amounted only to negligence given the prisoner also complained of his "inability to have a bowel movement for several days and other stomach pains, which could have been consistent with [the doctor's] diagnosis").

Here, Plaintiff may have been unhappy with Defendant Rectenwal's initial assessment of Plaintiff's shoulder injury. However, it cannot be said that a visual evaluation, accompanied by the provision of pain medication for an initial complaint of shoulder pain is so woefully inadequate as to amount to no treatment at all.

The same is true with respect to Plaintiff's claims against Defendant Wideman. On February 13, 2023, the day after Plaintiff sent a kite to medical, non-party Nurse Kelley evaluated Plaintiff. (ECF No. 1, PageID.7.) Plaintiff was then seen by Defendant Nurse Practitioner Wideman on February 16, 2023. (*Id.*) Defendant Wideman appears to have ordered and performed substantial medical treatment. (*Id.*) Following his visit with Defendant Wideman, Plaintiff received an x-ray, resulting in his medical diagnosis. (*Id.*) Thereafter, Defendant Wideman

provided Plaintiff with a pain injection and a sling for his shoulder. (*Id.*, PageID.8.) There is nothing to indicate that this care was so grossly inadequate so as to amount to deliberate indifference to Plaintiff's medical condition. Although it is clear that Plaintiff would have preferred to have received an MRI and surgery, (*id.*, PageID.8), this difference in judgment is not enough to state a claim. The Court will dismiss Plaintiff's claims of Eighth Amendment deliberate indifference against Defendants Rectenwal and Wideman.

### D.    Claims Under Michigan State Law

In addition to bringing claims for violation of Plaintiff's Eighth Amendment rights under § 1983, Plaintiff also seeks to bring claims for medical malpractice and violation of MDOC policy. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claims against Defendants Carr, Miller, Rectenwal, and Wideman will be dismissed, the Court will dismiss Plaintiff's state-law claims against these Defendants without prejudice to Plaintiff's ability to bring those claims in state court.

### Conclusion

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Allen, Macauley, Brooke, Brokaw, Hadden, Battle, Bagley, and Houghton are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Carr, Miller, Rectenwal, Wideman, and the MDOC will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state-law claims against these Defendants without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:      June 15, 2023                           /s/ Jane M. Beckering
                                                    Jane M. Beckering
                                                    United States District Judge